UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

        Plaintiff,

   v.

PRECIOUS PHYSICAL THERAPY,
Inc., *et al.*,

        Defendants.

_____/

Case No.: 19-10835

Sean F. Cox
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING IN PART, DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (ECF No. 56)

## I. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") filed this action alleging common law fraud and unjust enrichment. (ECF No. 1). State Farm seeks damages and declaratory relief. The crux of State Farm's case is the defendants participated in a scheme to defraud State Farm by causing the submission of fraudulent claims in relation to patients involved in automobile accidents. State Farm alleges the defendants submitted claims for treatment that were not medically necessary.

On October 15, 2020, State Farm filed the instant motion to compel. (ECF No. 56). The motion is directed at defendants Core Physical Therapy Corp.

("Core"), Hemalkumar Madhusudan Bhagat ("Hemal Bhagat"),[1] Payal Hemal

Bhagat ("Payal Bhagat"), and Salwa Elia ("Elia") (referred to collectively as the

"Core Defendants").  Core Defendants responded to the motion (ECF No. 58), and

State Farm replied (ECF No. 63).  In the motion, State Farm moved for an order

compelling Core Defendants to supplement responses to interrogatories and

requests to produce regarding emails, and to supplement responses to requests for

admission regarding summary charts reflecting initial examination records.

A hearing on the matter was held November 24, 2020, at which counsel for

the parties were present.  For the reasons discussed below, the motion to compel is

**GRANTED IN PART, DENIED IN PART**.

## II.    GENERAL DISCOVERY LEGAL STANDARDS

The Federal Rules of Civil Procedure were written to facilitate the discovery

of relevant evidence proportional to the needs of each case.  Rule 26 authorizes

relatively expansive discovery, subject to the considerations set forth in Rule

26(b)(1).  Further, a court has broad discretion over discovery matters, *Trepel v.

Roadway Express*, *Inc.*, 194 F.3d 708 (6th Cir. 1999), and in deciding discovery

disputes, a magistrate judge is entitled to that same broad discretion, and an order

---

[1] The parties refer to this defendant with the shortened name "Hemal Bhagat."

of the same is overruled only if the district court finds an abuse of discretion.[2]  In

assessing the proportionality, the court should look to:

> the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and
> whether the burden or expense of the proposed discovery
> outweighs its likely benefit.

*Rockwell Med., Inc. v. Richmond Bros., Inc.*, 2017 WL 1361129, at *1 (E.D. Mich.

Apr. 14, 2017) (quoting Fed. R. Civ. P. 26(b)(1)).

As explained in *Wilmington Trust Co. v. AEP Generating Co.*, 2016 WL

860693, at *2 (S.D. Ohio Mar. 7, 2016), courts have suggested both parties have

some stake in addressing the various relevant factors.  *Id.* (citing *Oracle America,*

*Inc. v. Google, Inc.*, 2015 WL 7775243, at *2 (N.D. Cal. Dec. 3, 2015) (observing

"[n]either party submitted a proper analysis of the Rule 26 proportionality factors"

and the moving party, Oracle, "did not fully address any of the proportionality

factors, including the importance of the requested discovery in resolving the issues,

and whether the burden or expense of the proposed discovery outweighs its likely

benefit"—leaving the court in the position of having to "make its best judgment

---

[2] In deciding discovery disputes, a magistrate judge is entitled to that same broad discretion, and his order is overruled if the district court finds an abuse of discretion.  12 Wright, Miller & Marcus, Federal Practice and Procedure § 3069, 350 n. 20 (2d ed. 1997 & Supp. 2010) (citing cases).  An abuse of discretion exists when the court applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.  *Todd v. RBS Citizens, N.A.*, 2010 WL 3943545, at *2 (E.D. Mich. Oct. 6, 2010) (citing *First Tech. Safety Sys., Inc. v. Depinet*, 11 F.3d 641, 647 (6th Cir. 1993)).

3

based on the limited information before it")).  The Court observed that a
responding party still must meet its burden of explaining how costly or time-
consuming responding to a set of discovery requests will be, because that
information is ordinarily better known to the responder than the requester.  *Id.*
However, once that information is presented, both sides are required to address the
issue of proportionality, "especially since the requesting party can explain as well
as the responder—and perhaps better—why the information it is seeking is
important to resolving the case and why it would be a good use of the other party's
resources to search for it."  *Id.*

## III.   ANALYSIS

### A.   Email Discovery

As part of its discovery effort, State Farm sought lists of Core Defendants'
email addresses (both personal and business) and to obtain emails sent and
received by those accounts relevant to its case.  State Farm served interrogatories
on Core to identify all email addresses used by its current and former employees or
independent contractors for business purposes.  Core objected to the interrogatories
as overboard and irrelevant.  Core indicated it does not issue email addresses to its
employees or independent contractors.  (ECF No. 56-3, PageID.814).  In
interrogatories to Payal Bhagat, Hemal Bhagat, and Elia, State Farm asked for the
identity of all email addresses they "used professionally or personally, from which

4

[they] have received or sent correspondence relating to any of the services provided to or by [the corporate Defendants] . . . as well as any of the allegations in the Complaint."  (ECF No. 56-4, PageID.824; ECF No. 56-5, PageID.834; ECF No. 56-6, PageID.845-46).  Payal Bhagat responded with an email address: payal12980@gmail.com.  (ECF No. 56-4, PageID.824).  None of the other defendants responded with an email address.  Through discovery, however, State Farm identified six additional email accounts it believes were used by the defendants which were not disclosed in interrogatories: an account used by Salwa Elia (salwaelia85@gmail.com), an account used by Hemal Bhagat (hemalbhagat16381@gmail.com and preciouspt90@gmail.com), a second account for Payal Bhagat (bhagatpayal80@gmail.com), an account Payal Bhagat purportedly used while she worked at defendant Sterling Physical Therapy Provider Corp. ("Sterling") (sterlingpt90@gmail.com), and an account related to Core (corept17@gmail.com).  (ECF No. 56, PageID.784, 786; ECF No. 63, PageID.1417).  As part of its request for relief, State Farm sought an order compelling Core Defendants to provide complete answers to interrogatories identifying all email addresses they have used for business purposes in connection with services performed at or on behalf of Precious Physical Therapy, Inc., ("Precious"), Sterling, and Core.  (ECF No. 65, PageID.1496).

State Farm served corresponding requests for production (RFPs) of emails relating to the claims at issue in this case.  (ECF Nos. 56-7, 56-8, 56-9, 56-10).  For example, RFPs served on Core included requests for communications related to any of the patients whose claims are at issue and any communications between Core and any entity relating to recruitment, solicitation, procurement, and/or retention of patients.  (RFP 1, ECF No. 56-7, PageID.852; RFP 9, ECF No. 56-7, PageID.855).  Similar requests were sent to the individual defendants.  After State Farm identified the additional email accounts following the initial production of documents, Core Defendants supplemented their production with emails from the corept17@gmail.com and bhagatpayal80@gmail.com accounts only.  State Farm found the supplemental production from the corept17 account to be deficient. State Farm is seeking production, or supplemental production, of emails from the following accounts: sterlingpt90@gmail.com, hemalbhagat16381@gmail.com, preciouspt90@gmail.com, and corept17@gmail.com (all email addresses will be referred to hereafter without "@gmail.com").  Each account will be addressed in turn.

Also at issue is State Farm's request for the identification of email accounts and production of emails from current and former employees and independent contractors.  This is addressed below.

       1.     sterlingpt90 Account

According to the Core Defendants, Payal Bhagat never had and does not now have access to or used the sterlingpt90 email address.  Hence, they assert she is unable to produce emails related to that address.  (ECF No. 58, PageID.1293). State Farm contests this assertion because Payal stated in a sworn interrogatory in another case her "email while employed at Sterling was sterlingpt90@gmail.com." (ECF No. 63, PageID.1417-18, ECF No. 63-3, PageID.1433).  The defendants counter that "there was confusion between [Payal] and her attorney representing her in a state court case that resulted in her attorney identifying this email address as an address used or controlled by Payal."  (ECF No. 65, PageID.1500-01).  Payal testified at her deposition *in this case* that she did not use and does not now have access to that email account.[3]  (*Id.*).  State Farm also points out that Payal testified she emailed patient information while working at Sterling.  (ECF No. 63, PageID.1418; ECF No. 56-34, PageID.1264-65).  However, she did not say from what email account she emailed the information, so this testimony does not prove that Payal used the sterlingpt90 account during her employ at Sterling.

The Court will not compel Payal Bhagat to identify this address as one she used for business purposes on the evidence presented.  Likewise, the Court cannot compel her to produce emails that do not exist in this account.  Sworn testimony in this case is that Payal Bhagat did not use this account, and the circumstances do

---

[3] This deposition testimony is not in the record.

7

not readily suggest she is being untruthful.  Nevertheless, Core Defendants "do not object to State Farm's request to subpoena Google for metadata for email accounts to which Defendants do not have access and did not use."  (ECF No. 65, PageID.1501).  Accordingly, State Farm has leave to subpoena Google for metadata from this account.

          2.    hemalbhagat16381 Account

Hemal Bhagat did not identify this account in interrogatories and emails from the account were not forthcoming at time State Farm filed this motion because of connectivity issues in India, where Hemal Bhagat currently lives.  (ECF No. 58-2, PageID.1317).  At some point prior to the submission of the parties' Joint Statement of Resolved and Unresolved Issues, he produced some emails. State Farm argues the production was deficient because it consists entirely of emails from 2019-2020, and contains mostly spam and personal emails.  It appears to State Farm that Hemal Bhagat has more to produce because he recently testified at his deposition he used this account for the last 15 years, and a co-owner of Precious, testified he received emails from Hemal Bhagat as early as 2016.  (ECF No. 63, PageID.1419-20).  Core Defendants contend they produced all non-privileged, responsive emails they were able to access.  (ECF No. 65, PageID.1501).  Further, in an affidavit Hemal Bhagat declared, "[s]ince the inception of this litigation, I have not deleted or destroyed any emails responsive to

8

Plaintiff's discovery requests."  (ECF No. 58-2, PageID.1318).  Defendants insist

Hemal Bhagat has produced all that is available and responsive.

As an initial matter, Hemal Bhagat must supplement his response to the

relevant interrogatory formally identifying this email account as one he used for

business purposes, as he does not contest he used the account for business

purposes.  Regarding the production of emails from this account, it appears Hemal

Bhagat does not have more he can produce, therefore, the motion to compel

supplemental production is denied.  To remedy this dispute, however, State Farm

requests leave to subpoena relevant metadata from Google for this account.  Core

Defendants do not consent this request.  State Farm is granted leave to subpoena

the metadata.

### 3.    preciouspt90 Account

State Farm associates the preciouspt90 account with Hemal Bhagat.  It

asserts Hemal has not produced any emails from this account.  (ECF No. 65,

PageID.1499).  State Farm apparently learned of this email account through

discovery from Core, specifically the corept17@gmail.com account.  One email

from corept17 identifies the preciouspt90 account.  It is an automated email from

Apple ID informing Hemal Bhagat that changes were made to his Apple ID,

"preciouspt90@gmail.com."  (ECF No. 63-2, PageID.1426).

State Farm did not support their assertion that the preciouspt90 account is the "primary business account at Precious." (ECF No. 65, PageID.1499). Although the name of the account points to Precious, and Hemal Bhagat was an owner of and physical therapist at Precious, this evidence is weak to establish that preciouspt90 was the primary business account and that it would contain responsive emails, especially when the only email we have associates this account with Hemal's Apple ID, not the physical therapy practice. Further, State Farm cites Hemal's deposition testimony that he "does not recall" this account (this testimony was not provided in support). (*See* ECF No. 63, PageID.1420).

Because circumstances do not suggest the preciouspt90 account was used for business purposes and would contain responsive emails, the motion to compel supplemental responses is denied. However, Core Defendants do not oppose State Farm serving a subpoena for metadata from this account on Google. Leave to do so is granted.

4.    corept17 Account

As an initial matter, Core Defendants do not dispute that the corept17 account was used for business purposes. Accordingly, Core must supplement its response to the relevant interrogatory formally identifying this account.

State Farm challenges the manner in which Core Defendants produced emails from the corept17 account. According to State Farm, production from the

corept17 account "(1) [ ] contained numerous stand-alone documents in PDF form, including police reports, for which no accompanying email was produced to identify the source; (2) [ ] was sorted by file name in alphabetical order, making it impossible for State Farm Mutual to group related documents (i.e., attachments and their source emails) in violation of Rule 34's requirement that documents be produced 'as they are kept in the usual course of business'; and (3) [ ] did not include any emails relating to Core's current and former employees and independent contractors other than Payal Bhagat and Elia." (ECF No. 63, PageID.1419). The third issue is addressed below.

Core Defendants assert they are not required to correct the production. (ECF No. 58, PadeID.1297). At the hearing, counsel for Core Defendants indicated the manner in which the documents were produced was the manner in which the documents were located using agreed-upon search terms.

Under Federal Rule of Civil Procedure 34(b)(2)(E)(i), a responding party may either produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Rule 34(b)(2)(E)(i) is "meant to prevent a party from obscuring the significance of documents by giving some structure to the production." *F.D.I.C. v. Cuttle*, 2012 WL 5990284, at *2 (E.D. Mich. Nov. 30, 2012) (citing *Johnson v. Kraft Foods N.A., Inc.,* 236 F.R.D. 535, 540 (D. Kan. 2006). The party arguing that it produced

documents as they were kept in the usual course of business bears the burden of showing that the documents were so kept. *Cardenas v. Dorel Juvenile Group, Inc.,* 230 F.R.D. 611, 618 (D. Kan. 2005). A party does so by revealing such information as where the documents were maintained, who maintained them, and whether the documents came from one single source or file or from multiple sources or files. (*Id.*).

Core Defendants made no showing the emails were *kept* in the manner produced, i.e. email attachments left unassociated with an email. Email attachments should be produced directly following the related email, as they are kept in the normal course, not as separate or stand-alone documents in alphabetical order. Moreover, the documents were not sorted according to categories in the request. State Farm did not ask for production by file name.

Because the emails and attachments were produced in a manner different from the manner in which they are ordinarily kept, Core Defendants are ordered to supplement their production of responsive emails from the corept17 account in accordance with Rule 34, i.e. not in alphabetical order but as they are kept in the usual course of business.

### 5. salwaelia85 and bhagatpayal80 Accounts

These accounts were not identified in interrogatories. State Farm learned of them through discovery. Core Defendants do not contest that these accounts were

used for business purposes.  Consequently, Core Defendants must supplement their interrogatory responses to formally identify these email accounts.

6.   Current and Former Employees and Independent Contractors

The parties strongly dispute whether Core Defendants have an obligation to identify email addresses used by current and former employees and independent contractors, and then produce emails sent and received by those accounts.  Core Defendants argued they cannot identify accounts and produce emails because they do not own or control their current and former employees' and contractors' accounts.  (ECF No. 58, PageID.1298).

A party may discover documents within another party's "possession, custody, or control."  Fed. R. Civ. P. 34(a).  The meaning of possession, custody, or control, for the purposes of Rule 34, includes actual possession, custody, and control as well as "the *legal right* to obtain the documents on demand."  *Duracore Pty Ltd. v. Applied Concrete Tech., Inc.*, 2015 WL 4750936, at *2 (W.D.Ky. Aug. 11, 2015) (quoting *In re Bankers Trust Co*., 61 F.3d 465, 469 (6th Cir. 1995) (emphasis added)).  "The party seeking production of documents bears the burden of proving that the opposing party has control over those documents."  *Robert Bosch LLC v. Snap-On Inc.*, 2013 WL 823330, at *1 (E.D. Mich. Mar. 6, 2013) (citing *United States v. Int'l Union of Petroleum & Indus. Workers, AFL–CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989)).

13

There is no dispute that Core Defendants did not provide its employees and independent contractors with email addresses.  Since Core did not issue the employees and contractors' email addresses, those emails are not in Core's actual possession, custody, or control.  Hence, the Court could compel Core Defendants to produce emails from current and former employees and contractors only if the defendants have the legal right to obtain those emails on demand.

State Farm cited *ID Ventures, LLC v. Chubb Custom Ins. Co.*, 2018 WL 8807125, at *2 (E.D. Mich. Oct. 12, 2018), in support of its position that Core Defendants should be required to provide the requested information.  (ECF No. 56, PageID.794).  *ID Ventures* is an order granting in part the defendant's motion to compel.  Much of the analysis was conducted on the record rather than written in the order, leaving the details unknown.  The court compelled the following:

> Compliance [with the Order] shall . . . require ID Ventures to formally ask its relevant employees to search their e-mail accounts, including their alleged personal e-mail accounts (some of which . . . appear to be corporate accounts), for documents responsive to Chubb's requests, and to provide Chubb with affidavits from each such employee attesting that a reasonable search was made and that all responsive documents located were provided to ID Ventures' counsel. ID Ventures' counsel shall then review any such documents and produce responsive ones to Chubb. To the extent any documents are withheld on the ground of privilege or work-product protection, ID Ventures shall provide Chubb with a proper privilege log.

*Id.* at *2 (footnote omitted).

14

*ID Ventures* itself does not support State Farm's position.  That order does not demonstrate that an employer has a *legal right to obtain* its employees' emails from their private email accounts.  It suggests only that a reasonable alternative is for the employer to "formally ask" the employees to search their own accounts for responsive documents.

In a footnote in *ID Ventures*, the Court quoted language and citations from *Chevron Corp. v. Salazar*, 275 F.R.D. 437, 448–49 (S.D.N.Y. 2011).  *ID Ventures*, 2018 WL 8807125, at n.2.  Addressing a Rule 45 subpoena served on an employee, the court compelled the non-party employee to provide emails containing communications relevant to the case despite the fact that some of those emails were from her private email account.  *Chevron Corp.*, 275 F.R.D. at 448-49.  The court stated, "[c]ourts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession."  *Id.* (collecting cases).  As for former employees, however, the court suggested the party-employer "at the very least, ask their former employees to cooperate before asserting that they have no control over documents in the former employees' possession."  *Id.* (citing *Export-Import Bank of U.S. v. Asia Pulp & Paper Co.*, 233 F.R.D. 338, 341 (S.D.N.Y. 2005)).

Core Defendants have not cited any contrary authority suggesting employers do not have the legal right to obtain business communications in its current

employees' or independent contractors' possession, and the Court knows of no such authority.  Indeed, it appears the opposite is true.  *See id.* at 449; *Caston v. Hoaglin*, 2009 WL 1687927, at \*3 (S.D. Ohio June 12, 2009) ("Huntington has control over its current employees and the records within their possession.") (collecting cases stating the same).  Because "employers have control over their employees[,]" *Chevron Corp.*, 275 F.R.D. at 449, Core Defendants are ordered to produce responsive emails sent and/or received by current employees or independent contractors' email accounts.[4]   If no such communications exist, Core Defendants must certify so in writing.  The Court notes Core Defendants have made no assertion they previously asked current employees to produce responsive documents but the employees refused.  Thus, there is no evidence that they would be unwilling to produce responsive documents or that Core Defendants do not have the practical ability to obtain the emails.

The Court will not compel Core Defendants to produce documents in its *former* employees' and contractors' possession.  Core Defendants stated at the hearing they have no objection to formally asking former employees and

---

[4] The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment.  As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts.  Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits.

independent contractors to search their email accounts for responsive communications.  Thus, as was suggested in *Chevron Corp.*, Core Defendants are directed to formally ask for documents responsive to State Farm's requests, and to provide State Farm with affidavits from each such employee or independent contractor attesting that a reasonable search was made and that all responsive documents located were provided to Core Defendants' counsel.  Core Defendants' counsel shall then review any such documents and produce responsive ones to State Farm. To the extent any documents are withheld on the ground of privilege or work-product protection, Core Defendants shall provide State Farm with a proper privilege log.

In the briefing, Core Defendants additionally argued emails from current and former employees and independent contractors would be irrelevant and not proportional to the needs of the case.  (ECF No. 58, PageID.1303-06).

As a general matter, even though the rules were amended in 2015 to bring the proportionality requirement to the fore, "the 2015 amendments do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery." *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab. Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. May 11, 2016) (citation omitted).  Further, the concept of relevance remains the same as that set forth in Fed. R. Evid. 401; it is evidence having "*any* tendency to make a fact more or less probable."  *In re Ford*

*Motor Co. Spark Plug & 3–Valve Engine Prod. Liab. Litig.*, 98 F. Supp. 3d 919,

925 (N.D. Ohio 2014) (citation omitted) (emphasis in original).  In its complaint,

State Farm alleged the defendants engaged in a scheme to defraud State Farm and

enrich themselves by rendering unnecessary medical services on behalf of patients

involved in vehicle accidents and insured by State Farm.  If they exist, business

communications to or from current and former employees and independent

contractors regarding those patients and business operations could certainly contain

relevant information.

Finally, as stated above, in assessing proportionality as it relates to disputed

discovery requests, the court should look to:

> the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to
> relevant information, the parties' resources, the
> importance of the discovery in resolving the issues,
> and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.

*State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d

700, 704 (E.D. Mich. 2017) (quoting *Rockwell Med., Inc. v. Richmond Bros., Inc.*,

2017 WL 1361129, at *1 (E.D. Mich. Apr. 14, 2017)).

On balance, the proportionality factors weigh in favor of compelling the

discovery.  *See*, *e.g.*, *id.* at 705-08.  Notably, health care fraud is an important

issue, *id.* at 707, and both parties appear to have sufficient resources to conduct the

discovery at issue.  State Farm has sufficiently demonstrated the importance of

emails from current and former employees and independent contractors, assuming

responsive emails exist.  Further, although State Farm could have served Rule 45

subpoenas for the emails from the non-parties, Core Defendants made no showing

that obtaining the emails would be so burdensome as to outweigh the benefit of the

discovery.  Accordingly, Core Defendants are ordered to produce business emails

in the possession of current and former employees and independent contractors as

provided above.

        B.      <u>Requests for Admission</u>

The final dispute is over State Farm's Rule 36 requests for admission.  By

way of background, an attorney for State Farm created four summary charts based

on undisputed initial examination reports for the patients at issue in this case.

These charts were attached to the complaint.  They essentially break down the

findings and conclusions in the initial examinations by issue or problem area.  For

example, there is a column indicating patients found to have difficulty in activities

of daily living after their car accident.  (ECF No. 1-3).  For purposes of discovery,

State Farm sent to the Bhagats and Core requests for admission as to the accuracy

of 89 charts.  (ECF Nos. 56-30, 56-31, 56-32).  The 89 charts are further break

downs of the four charts attached to the complaint—this time broken down by each

issue or problem area.  State Farm did not ask the defendants to admit the authenticity of the charts or to stipulate to their admissibility.

The Bhagats and Core objected to each of the requests.  They stated the requests did not "seek an admission from Defendant 'for purposes of the pending action only,'" and the requests "act as an interrogatory and attempt to uncover defendant's legal theories and/or seek conclusions of law on ultimate issues of medical treatment for the patients at issue."  (*See*, *e.g.*, ECF No. 56-30, PageID.1006).  It appears all the objections to the requests to admit are identical.

The defendants raise a number of arguments why they do not have to respond to the requests.  They argue State Farm is attempting to circumvent authentication issues under Fed. R. Evid. 1006 through these requests.  (ECF No. 58, PageID.1307).  They characterize the requests to admit the factual accuracy of the charts as relating to the central fact in dispute (whether the Core defendants defrauded State Farm) because the charts are a misleading representation of medical records to show patterns.  (*Id.* at PageID.1310-11).  They believe admitting accuracy would amount to an admission of fraud.  The defendants also argue responding to the requests would be unduly burdensome because of the effort it would take to verify the summaries accurately reflect the medical records. (*Id.* at PageID.1311).

Fed. R. Civ. P. 36(a)(1) provides a party may serve on another party "a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (b) the genuineness of any described documents."  "Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact." *T. Rowe Price Small–Cap Fund, Inc. v. Oppenheimer & Co.,* 174 F.R.D. 38, 42 (S.D.N.Y. 1997).

State Farm's requests to admit, on their face, seek admissions of facts laid out in the summary charts.  For example, the defendants are asked to admit or deny that patient "NS," treated at Precious, had limitations with activities of daily living per the initial examination.  (*See* ECF No. 56-30, PageID.1022).  This is seeking an admission or denial of fact.  Consequently, they must supplement their responses to admit or deny the requests "or state in detail why the answering party cannot truthfully admit or deny it."  Fed. R. Civ. P. 36(a)(4).  The defendants were not asked, and are not compelled, to admit to any conclusions drawn from the charts.

It is not clear, as defendants suggest, an admission of accuracy will circumvent State Farm's obligation to authenticate the summaries under Fed. R.

Evid. 1006.  The Sixth Circuit has held Rule 1006 imposes five requirements for the admission of summary evidence:

> (1) the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the proponent of the summary must have made the documents available for examination or copying at a reasonable time and place; (3) the underlying documents must be admissible in evidence; (4) the summary must be accurate and nonprejudicial; and (5) the summary must be properly introduced through the testimony of a witness who supervised its preparation.

*United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008) (citation omitted). Accuracy of the summary is only one of those requirements.  Hence, it is not entirely clear admitting to the accuracy of the summaries would obviate the need for State Farm to authenticate the summaries for use as evidence.  The Court, in requiring defendants to supplement their responses to the requests for admission, is not making a determination as to the admissibility of the 89 charts attached to the requests, or the four charts attached to the complaint.  That is an issue to be resolved later, if necessary.

Defendants' second argument—that an admission would amount to an admission of fraud—is unavailing.  State Farm may try to use the summaries to show patterns and argue those patterns show fraud, but admitting the accuracy of information taken from medical records defendants themselves created does not by itself amount to an admission of fraud.  Core Defendants are free to rebut State

22

Farm's fraud arguments and display a broader picture of patient treatment than shown in the charts.  Refusing to respond to the requests to admit because the charts show a biased view of treatment is inappropriate.[5]

The Bhagats and Core have not sufficiently demonstrated responding to the requests for admission would be unduly burdensome.  They must do more than simply assert in a brief that verifying the data would be unduly burdensome.  *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 705 (E.D. Mich. 2017) ("[A] responding party still must meet its burden of explaining how costly or time-consuming responding to a set of discovery requests will be, because that information is ordinarily better known to the responder than the requester.") (citing *Wilmington Trust Co. v. AEP Generating Co.*, 2016 WL 860693, at *2 (S.D. Ohio Mar. 7, 2016)); *Powell v. Tosh*, 2011 WL 13210026, at *3 (W.D.Ky. Aug. 2, 2011) ("The Tosh Defendants correctly point out that the Plaintiffs fail to offer specific facts to support their general protests of embarrassment, oppression, undue burden or expense. No affidavit or other evidence accompanies their motion. All that we are left with are conclusory allegations. As the above-cited law explains, such allegations are not sufficient.").

---

[5] To be clear, the Court is compelling Core Defendants only to respond to the requests to admit.  The Court is not compelling them to admit any of the requests for admission.

Finally, Defendants point to the colloquy between Judge Roberts and counsel for State Farm in another matter.  They assert State Farm has been told using summary charts is inappropriate.  Defendants mischaracterize what Judge Roberts said.  Judge Roberts held a conference with the parties' attorneys in which she expressed concern about whether State Farm intended to prove damages solely through the use of summary charts created from information in medical records, among other things.  (ECF No. 58-4, PageID.1357).  Judge Roberts did not discuss requests for admission or the admissibility of the summary charts, nor did she decide using summary charts is inappropriate.

C.    Conclusion

Core Defendants are ordered as follows:

- They must supplement their responses to interrogatories identifying email accounts they used for business purposes,

- They must supplement their responses to requests to produce documents regarding the corept17 email account in accordance with Rule 34,

- They must produce responsive emails in the possession of current employees and independent contractors,

- They must formally ask former employees and independent contractors to search their personal email accounts for responsive documents, and those employees and contractors must submit an affidavit to Core Defendants attesting that a reasonable search was made.  If no documents exist from current or former employees and independent contractors, Core Defendants must certify to that in writing to State Farm,

- And, they must supplement their responses to the requests for admission of the accuracy of the 89 charts by either admitting or denying the accuracy, or stating in detail why they cannot truthfully admit or deny.

State Farm is granted leave to subpoena metadata from Google for the following accounts: sterlingpt90@gmail.com, preciouspt90@gmail.com, and hemalbhagat16381@gmail.com.

Fact discovery in this case was recently extended to December 15, 2020. (ECF No. 66).  However, to give Core Defendants sufficient time to supplement their discovery responses in accordance with this Order, they will have **21 days from the date of this Order** to do so.  State Farm must serve subpoenas for metadata on Google **within 7 days of this Order**.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date: December 2, 2020 s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge