UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

         Plaintiff,

   v.

PRECIOUS PHYSICAL THERAPY,
Inc., *et al.*,

         Defendants.

_____/

Case No.: 19-10835

Sean F. Cox
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## ORDER GRANTING IN PART/DENYING IN PART PLAINTIFF'S MOTION FOR SANCTIONS (ECF No. 81)

## I.    INTRODUCTION

This matter is before the Court on Plaintiff State Farm Mutual Automobile Insurance Company's ("State Farm") February 9, 2021, motion for sanctions pursuant to Fed. R. Civ. P. 37.  (ECF No. 81).  This motion arises from the Court's December 2, 2020, Order granting in part State Farm's October 15, 2020, motion to compel.  (*See* ECF Nos. 56, 67).  The motion to compel was directed at defendants Core Physical Therapy Corp. ("Core"), Hemalkumar Madhusudan Bhagat ("Hemal Bhagat"),[1] Payal Hemal Bhagat ("Payal Bhagat"), and Salwa Elia ("Elia"), referred to collectively as the "Core Defendants."

---

[1] The parties refer to this defendant with the shortened name "Hemal Bhagat."

Briefly, State Farm argues the Core Defendants have not fully complied with the Court's December 2, 2020 Order, and thus they should be sanctioned pursuant to Fed. R. Civ. P. 37(b)(2).  As sanctions, State Farm seeks an Order compelling the Core Defendants to comply with the Court's discovery Order, monetary sanctions, and an award of costs incurred in bringing this motion.

The Court held a hearing related to the matter on March 23, 2021.  Counsel for State Farm and Core Defendants were present.  For the following reasons, the motion will be granted in part and denied in part.

## II.     DISCUSSION

### A.     Some General Principles Regarding Discovery

All litigants, and all experienced counsel, understand the Federal Rules of Civil Procedure authorize broad discovery.  *See*, *e.g.*, *United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 657 (6th Cir. 1976).  Any matter that is relevant to a party's claims or defenses - relevant in the sense it reasonably may lead to the discovery of admissible evidence and is not privileged - is subject to discovery. The concept of relevance during discovery is necessarily broader than at trial, *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 500-501 (6th Cir. 1970), and "[a] court is not permitted to preclude the discovery of arguably relevant information solely because, if the information were introduced at trial, it would be 'speculative' at best." *Coleman v. American Red Cross*, 23 F.3d 1091, 1097 (6th Cir. 1994).

2

It is true the Court has a duty - emphasized in some of the rules governing discovery - to deny discovery directed to matters not legitimately within the scope of Rule 26, and to protect a party or person from harassment or oppression that may result even from a facially appropriate discovery request. *See generally Herbert v. Lando*, 441 U.S. 153, 177 (1979). Additionally, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably duplicative, or the burden of providing discovery outweighs the benefits, taking into account factors such as the importance of the requested discovery to the central issues in the case, the amount in controversy, and the parties' resources. *See* Fed. R. Civ. P. 26(b)(2).

In addition to the idea that discovery is broad and is designed to permit parties to obtain enough evidence either to prove their claims or disprove the opposing party's claim, discovery under the Federal Rules of Civil Procedure has been designed to be a collaborative process. As one Court observed:

> It cannot seriously be disputed that compliance with the "spirit and purposes" of these discovery rules requires cooperation by counsel to identify and fulfill legitimate discovery needs, yet avoid seeking discovery the cost and burden of which is disproportionally large to what is at stake in the litigation. Counsel cannot "behave responsively" during discovery unless they do both, which requires cooperation rather than contrariety, communication rather than confrontation.

3

*Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 357-58 (D. Md. 2008).

Such a collaborative approach is completely consistent with a lawyer's duty to

represent his or her client zealously. *See Ruiz-Bueno v. Scott*, 2013 WL 6055402,

*4 (S.D. Ohio Nov. 15, 2013). It also reflects a duty owed to the court system and

the litigation process.

The mandatory disclosure provisions of Rule 26(a) and the various "meet

and confer" obligations imposed by Rule 26(f) are clear indicators that counsel are

required to approach discovery cooperatively. Rule 26(f) requires the parties to

meet and confer early in the case to discuss, among other matters, "any issues

about disclosure, discovery, or preservation of electronically stored information,

including the form or forms in which it should be produced. . . ." Fed. R. Civ. P.

26(f)(3)(C). Counsel's obligation to approach discovery cooperatively and in

good faith is governed, in part, by Fed. R. Civ. P. 26(g). That rule provides, in

relevant part, that every time an attorney signs a disclosure, discovery response, or

objection, the attorney is certifying that "to the best of the [attorney's] knowledge,

information, and belief **formed after a reasonable inquiry**," the statements the

attorney is making are "consistent with the[] rules and warranted by existing law or

by a nonfrivolous argument" for extending or changing the law, "not interposed for

any improper purpose," and not unduly burdensome or unreasonable. That

obligation is backed up by sanctions as provided in Rule 26(g)(3). Those sanctions

4

can be imposed if an attorney fails in his or her "duty to make a reasonable investigation to assure that their clients have provided all available responsive information and documents." *Bernal v. All American Investment Realty, Inc.*, 479 F. Supp. 2d 1291, 1333 (S.D. Fla. 2007). "An attorney has made a 'reasonable inquiry' if the 'investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances. . . . Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.'" *Quinby v. WestLB AG*, 2005 WL 3453908, *4 (S.D.N.Y. Dec. 15, 2005) (quoting the 1983 Advisory Committee Notes to Rule 26).

**B.      Standard**

Under the Federal Rules of Civil Procedure, the Court has discretion to impose a number of sanctions for violations of its discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(A). Instead of these sanctions, or in addition to them, "the court must order the disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

**C.      Background**

State Farm's motion for sanctions can be separated into three basic categories: (1) misrepresentations regarding email accounts and emails, (2)

5

responsive emails from both current and former employees, as well as independent

contractors, and (3) the corept17@gmail.com account.  Each will be addressed in

turn.

### 1.     Identifying Email Accounts Used for Business Purposes

During the discovery period, State Farm served an interrogatory on Core

Defendants asking them to identify all email accounts they used for business

purposes and a request for production of certain emails from those accounts.  Core

Defendants initially identified some of the relevant email accounts.  Discovery

revealed additional accounts used by Core Defendants which defendants later

supplemented interrogatories to identify.  Not satisfied with that which has been

produced, and believing there might be additional accounts containing

discoverable information, State Farm argues the defendants should be ordered to

identify them and the pertinent responsive emails should be produced.  Since, the

Court's December 2, 2020, Order the accounts still at issue are

sterlingpt90@gmail.com, preciouspt90@gmail.com, and Hemal Bhagat's personal

email account hemalbhagat16381@gmail.com (referred to hereafter without

"@gmail.com").

### a.  sterlingpt90 Account

In its motion to compel, State Farm maintained Payal Bhagat should be

compelled to identify the sterlingpt90 account as one she used for business

6

purposes.  To support its position, State Farm presented an interrogatory response

from another case in which Payal Bhagat indicated the sterlingpt90 account was

her email address while she worked at Sterling Physical Therapy Provider Corp.

Bhagat's counsel in this case countered there was confusion between Bhagat and

her attorney in the other case that lead to the erroneous interrogatory response.

(*Id.*).  Further, in this case she testified under oath she never used that account and

did not have access to it.  The Court concluded this evidence did not demonstrate

Payal Bhagat was untruthful in asserting she did not use or have access to the

account in this case.  Hence, the Court did not compel Payal Bhagat to identify this

account.  (ECF No. 67, PageID.1517-18).

State Farm now contends it has evidence Payal Bhagat can and has accessed

the sterlingpt90 account, and that the account contains responsive emails which

should be produced.  With leave of the Court, State Farm subpoenaed Google for

metadata related to the account.  The metadata revealed Payal Bhagat's telephone

number is listed as the recovery telephone number for the account.  (ECF No. 81-

17).  The recovery email lists the preciouspt90 account, which in turn lists Hemal

Bhagat's personal email as its recovery email.  Thus, according to State Farm, the

defendants do have access to the account, even if they do not recall the password.

(ECF No. 81, PageID.1853-54).  Metadata further revealed the account was

accessed on May 7, 2020 and November 17, 2020.  (ECF No. 81-17).  State Farm

insists the IP address used to access the account on both dates is an IP address associated with Payal Bhagat.  (ECF No. 81, PageID.1854; ECF No. 84, PageID.2125; ECF No. 87, PageID.2169, n.3).  Payal Bhagat contests she was successful in accessing the account.

In response, Core Defendants insist Payal Bhagat was unaware her telephone number was the recovery telephone number associated with the account until State Farm filed this motion and that the login dated November 17, 2020, was unsuccessful as the metadata indicated repeated logins at the same time.  (ECF No. 84, PageID.2124-25).  However, contrary to Core Defendants' assertion, the November 17, 2020 login was successful, according to a Google employee who apparently works in legal support at google (his email address is google-legal-support@google.com).  (ECF No. 87-3).

Despite Payal Bhagat's feasible access to the account, sanctions should not be awarded.  Core Defendants were not compelled to identify sterlingpt90 as a business account for Payal Bhagat.  Thus, it cannot be said that Payal Bhagat failed to comply with the Court's discovery Order by not identifying the account. Certainly, the metadata revealing two logins in 2020 (during the pendency of this action), is problematic, but it does not demonstrate the sterlingpt90 account was used by Payal Bhagat for business purposes.  Even if it was conclusively established Payal Bhagat was the person who accessed the account in 2020, there

8

has been no showing she accessed the account for business purposes during the time relevant to the complaint, well before 2019. Moreover, even if Payal Bhagat had ready access to the account, that alone does not establish she misrepresented her use of the account to State Farm and the Court.

The sterlingpt90 metadata also indicates emails were exchanged with Asad Mecci (who was Sterling's biller) (ECF No. 81-27), with other medical providers (ECF No. 81-28), and with Hemal Bhagat's personal email (ECF No. 81-29), all in 2016. It is State Farm's position that these emails are responsive to its discovery requests and should be produced. State Farm's position is tenuous. According to State Farm, because persons connected to the Core Defendants exchanged emails with the sterlingpt90 account, those emails are responsive emails relevant to the claims in this case which should be produced. To accept this position would require a leap of faith and a leap of logic. In any event, the Core Defendants did not defy the Court's Order because the Court did not order the Core Defendants to produce emails from this account. Sanctions will not be imposed with regard to sterlingpt90.

b. preciouspt90@gmail.com

As with the sterlingpt90 account, Payal Bhagat's telephone number and Hemal Bhagat's email address are listed as the recovery telephone number and email for the preciouspt90 account. (ECF Nos. 81-17, 81-19). What differentiates

this account is that there have apparently been no attempts by the Core Defendants to access this account.  The most recent login for the preciouspt90 account was during March 2017—well before this case was initiated.  (ECF No. 81-19).

In the Court's December 2, 2020, discovery Order, the Court did not order Core Defendants to supplement discovery responses identifying this account as used for business purposes or to produce emails from the preciouspt90 account. The circumstances did not suggest preciouspt90 was the primary business account for Precious Physical Therapy, Inc.  (ECF No. 67, PageID.1521).  The evidence presented here does not change the circumstances—there is no evidence the Core Defendants were untruthful when they asserted neither of them used this account for business purposes.  Thus, failure to identify this account as one used by the defendants for business purposes does not contravene the Court's Order.

Coincidentally, the metadata also revealed emails exchanged between preciouspt90 and Hemal Bhagat's personal email, other medical providers, law firms, insurers and claims administrators, and a previously-undisclosed email address State Farm believes is another Precious Physical Therapy account: preciousptgo@gmail.com.  (ECF No. 81, PageID.1856).

State Farm asserts these emails are responsive to its discovery requests and should be produced.  Again, the fact that emails were exchanged between this account and the defendants, medical professionals, and legal professionals does not

10

indicate the Core Defendants misrepresented their use of this account.  Further, the

fact emails were exchanged does not indicate those emails are responsive and

relevant to the claims in this case.  Production from this account was not part of the

Court's discovery Order.  The Court will not rely on assumptions to determine the

Core Defendants did not comply with its Order.  Sanctions will not be awarded

with regard to this account.

c.      Hemal Bhagat's personal account

Because the Core Defendants did not contest Hemal Bhagat used his

personal account for business purposes, Hemal Bhagat was ordered to formally

respond to the appropriate interrogatory identifying the account.  However, in light

of Hemal Bhagat's sworn statements and defendants' counsel's statements at the

hearing on the motion to compel, the Court did not require further production of

emails because it appeared there were no more emails to produce.  (ECF No. 67,

PageID.1520).

State Farm argues the Core Defendants have withheld additional electronic

communications that should have been produced, and therefore, sanctions are

warranted.  The basis for this assertion, as with the other accounts, is the Google

metadata which indicates Hemal Bhagat exchanged emails with Payal Bhagat,

Elia, and the Bhagat's accountant in 2016 and 2017 that were not produced.  (ECF

No. 81, PageID.1845, 1856-57).

11

At the hearing on this matter, State Farm suggested the Court undertake an in camera review of Hemal Bhagat's emails to determine whether there are responsive emails in the account withheld from production. The Court will not do so. As with the accounts discussed above, State Farm's argument that responsive emails have been withheld is not persuasive. The Core Defendants, including Hemal Bhagat, have testified under oath they have produced all responsive emails that exist in their accounts. Core Defendants' counsel have stated on the record on multiple occasions that the defendants have produced all the responsive emails to which they have access. A party found to have lied under oath may be sanctioned under the Court's inherent authority to impose sanctions for bad faith. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991). The Federal Rules of Civil Procedure expressly provide for sanctions against an attorney who submits false statements to the Court. Fed. R. Civ. P. 11(c). The Court will not rely on minimally suggestive metadata to conclude the defendants and their counsel have misrepresented their use of accounts and existence of emails. The Court also will not award sanctions in relation to the discovery Order; the Court is not convinced Hemal Bhagat violated the Court's Order with regard to his email account.

  d.  State Farm's Additional Arguments Regarding Email

State Farm brought forth argument relating to email accounts in addition to those discussed above, largely arguing the Core Defendants misrepresented their

12

use of emails accounts and the existence of responsive emails.  For example, State Farm points out metadata from Hemal Bhagat's account revealed emails exchanged with Elia at salwaelia85@gmail.com, but Elia testified she never emailed Hemal Bhagat.  (ECF No. 81, PageID.1857).  As another example, State Farm learned of an account, salwaputrus85@gmail.com, it maintains is another account of Elia's because the address is so similar to salwaelia85@gmail.com. (*Id.*).  State Farm also identified an account believed to be another business account for Precious Physical Therapy, Inc., preciousptgo@gmail.com, that was not disclosed during discovery.

State Farm seeks sanctions for misrepresentations.  The Court is not convinced the Core Defendants have made misrepresentations to the Court, or at least that any misrepresentations were made for the purpose of stonewalling discovery.  For example, although Elia testified she never emailed Hemal Bhagat, emails in Hemal's account show otherwise.  Core Defendants' argument that Elia's testimony was taken out of context is not implausible.  According to the defendants, Elia's testimony is more properly read as denying emailing Hemal and Payal Bhagat regarding any business matters, not that she never emailed them about anything, because she was being asked about business emails before the question about emailing Hemal.  (ECF No. 84, PageID.2127).  Regardless, it is not clear that Elia's deposition testimony is at odds with metadata showing she in fact

did exchange emails with Hemal Bhagat.  (*Id.* at PageID.2128).  Even if Elia

misrepresented the extent of email communications with Hemal and Payal, the

misrepresentation does not bear on the discovery in this case.  In addition to the

testimony she never emailed Hemal Bhagat, Elia also testified, unequivocally, that

she "never sent a business email from" her email account.  (ECF No. 81-9).

Viewing all the testimony, it appears the better understanding of Elia's testimony is

that she never sent a business email to Hemal Bhagat.  It is business emails State

Farm is after; personal emails were not part of the discovery request and are

irrelevant.

In addition, the fact salwaputrus85@gmail.com is very similar to

salwaelia85@gmail.com does not in and of itself demonstrate Elia is hiding an

account she used for business purposes that contains responsive emails.

State Farm also seeks leave of the Court to subpoena Google for metadata

for a new list of email accounts: corept17@gmail.com, salwaelia85@gmail.com,

payal12980@gmail.com, bhagatpayal80@gmail.com, preciousptgo@gmail.com,

and salwaputrus85@gmail.com.  (ECF No. 81, PageID.1862).  The motion for

sanctions is not a motion for additional discovery.  State Farm has not clearly

connected the request for leave to subpoena Google with a violation of this Court's

discovery Order.  State Farm also has not sufficiently demonstrated why leave to

conduct further discovery for metadata should be granted.  The argument that the

14

metadata is needed to reveal further misrepresentations, like those State Farm maintains have already been revealed, is not persuasive.  As discussed herein, metadata only reveals the existence of emails, not the content.  The two should not be conflated.

As further sanctions, State Farm argues the Core Defendants should be made to pay monetary sanctions and expenses incurred in its effort to obtain discovery materials.  (*Id.* at PageID.1863).  Because State Farm has not demonstrated a violation of this Court's discovery Order with regard to emails, neither monetary sanctions nor costs will be awarded.

## 2.    Current and Former Employees and Independent Contractors

In its October 15, 2020, motion to compel, State Farm argued it was entitled to identification of email accounts and production of responsive emails from Core Defendants' current and former employees and independent contractors.  (ECF No. 56, PageID.793-94).  It was established that Core Defendants did not provide company email addresses; if necessary, employees and independent contractors used their own personal email accounts for business emails.  Consequently, Core Defendants argued they could not produce those emails because the email accounts were not in their custody or control.  (ECF No. 58, PageID.1305).

In the December 2, 2020 Order, the Court concluded Core Defendants have control over business documents in their *current* employees' and independent

15

contractors' possession, including emails in their personal email accounts.  (ECF No. 67, PageID.1526-27).  Accordingly, the Court ordered Core Defendants to "produce responsive emails sent and/or received by current employees or independent contractors' email accounts[]" responsive to State Farm's requests. (*Id.* at PageID.1527) (footnote omitted).  If no such emails existed, Core Defendants were directed to certify so in writing.

To date, Core Defendants have not produced any emails from current employees.  They assert they have not had any employees since the beginning of 2020.  Despite the Order to do so, it is not so clear whether Core Defendants have certified in writing they do not have any emails from current employees to produce.

The Court did not require Core Defendants to produce documents in their *former* employees' and independent contractors' personal email accounts.  Instead, Core Defendants were "directed to formally ask [their former employees and independent contractors] for documents responsive to State Farm's requests, and to provide State Farm with affidavits from each such employee or independent contractor attesting that a reasonable search was made and that all responsive documents located were provided to Core Defendants' counsel."  (*Id.* at PageID.1528).  If no documents exist, Core Defendants were ordered to certify to that in writing.

16

State Farm has not received any affidavits or responsive documents from former employees and independent contractors.  There has been no certification in writing that no emails are available to be produced.  In addition to the lack of emails or certification, State Farm argues the letter mailed to the former employees and independent contractors inappropriately limited the scope of the search such that responsive emails would likely be missed.  Core Defendants asked for a search of email accounts "for communications related to Core Physical Therapy, Precious Physical Therapy, and Sterling Physical Therapy, and that were sent or received from Hemalkumar Madhusudan Bhagat, Payal Hemal Bhagat, and Salwa Elia." (ECF No. 81-14, PageID.1959).  According to State Farm, their discovery requests were much broader, including requests for emails relating to the patients at issue in the Complaint; the Core Defendants' efforts to recruit, solicit, and retain patients; and the operations of Core, Sterling, and Precious, among other topics.  State Farm's search terms were also not included in the letter.  (ECF No. 81, PageID.1849-50).

At the hearing, counsel for the parties agreed to resolve the matter.  The parties will agree on a list of search terms that Core Defendants will mail, as part of a new letter, to all of the former employees and independent contractors.  The parties must confer on the list of terms **within 7 days** of this Order.  Should a

dispute arise regarding the search terms and/or the letter, the parties must call the

chambers of the undersigned before filing a motion.

In light of Core Defendants' willingness to resend a letter with agreed upon

search terms, the Court will not deem Core Defendants to be in violation of the

Court's Order for their failure to certify in writing that no responsive documents

are available thus far.  However, Core Defendants must provide the written

certification with regard to current and former employees and independent

contractors as appropriate and within a reasonable time after sending the letters to

the former employees and independent contractors.

### 3. Corept17 Account

Core Defendants were ordered to supplement or correct their production of

responsive emails from the corept17 account to conform to Fed. R. Civ. P. 34 by

December 23, 2020.  Their original production of emails was problematic because

it "(1) [ ] contained numerous stand-alone documents in PDF form, including

police reports, for which no accompanying email was produced to identify the

source; [and] (2) [ ] was sorted by file name in alphabetical order, making it

impossible for State Farm Mutual to group related documents (i.e., attachments

and their source emails) in violation of Rule 34's requirement that documents be

produced 'as they are kept in the usual course of business.'"  (ECF No. 67,

PageID.1522) (quoting ECF No. 63, PageID.1419).  Under Federal Rule of Civil

Procedure 34(b)(2)(E)(i), a responding party may either produce documents "as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Because the production of emails from this account did not conform to the rule, Core Defendants were "ordered to supplement their production of responsive emails from the corept17 account in accordance with Rule 34, i.e. not in alphabetical order but as they are kept in the usual course of business."  (*Id.*).

Core Defendants did not properly supplement their production.  The initial production of responsive emails contained 26,150 documents.  The supplemental production, which essentially should have been a reordering of the documents, contained only 1,165 documents.  (ECF No. 81, PageID.1851-52).  Further, the supplemental production contained new emails not previously disclosed and the emails produced were photocopied cutting off the dates and messages.  (*See* ECF No. 81-16).

In response, Core Defendants insist they complied with the Order.  (ECF No. 84, PageID.2121).  Payal Bhagat testified the emails were re-printed, "include[ing] attachments from the previous production and [were] reproduced [ ] in the manner in which Payal maintains the emails from the corept17 email account on her computer."  (*Id.* at PageID.2132).  Payal Bhagat testified she printed every email in the account, not just the emails gathered by using State Farm's search terms, and

gave it all to her attorney.  She could not explain why certain documents included in the initial production were omitted from the supplemental production.  (ECF No. 87, PageID.2173; ECF No. 87-4).  Bhagat stated she did not delete any emails since the initial production.  (*Id.* at PageID.2198-99).  She also could not explain why emails contained in the supplemental production were not included in the initial production, nor could she explain why the emails printed as they did— cutting off the dates and parts of the messages.  (*Id.* at PageID.2202-03).  At the hearing, counsel did not have an explanation for the deficient supplemental production.

Core Defendants indeed did not obey the Court's discovery order for corrected production of emails from the corept17 account.  Sanctions are warranted here.  Core Defendants must properly supplement the initial roughly 26,000 page production of emails from the corept17 account in accordance with the Court's Order and Rule 34.

Both Core Defendants and Core Defendants' counsel are further Ordered to pay a portion of the costs incurred in bringing this motion.  Counsel is required to share in paying costs because an attorney is obligated to review documents provided by the client to ascertain whether the production complies with the discovery request (or Court Order), and if not, at the very least take steps to

remedy the deficiency.  *See* Fed. R. Civ. P. 26(g); *Brown v. Tellermate Holdings Ltd.*, 2014 WL 2987051, at *18-19 (S.D. Ohio July 1, 2014).

To assess an appropriate cost award, State Farm must submit supplemental briefing on the matter **within 7 days** of this Order.  Core Defendants will have 7 days from service of State Farm's supplemental brief to file a response.  No reply will be allowed.  The Court may schedule a status conference after receipt of the briefs.

Finally, State Farm seeks leave to conduct out-of-time depositions of witnesses and conduct discovery related to any subsequently produced documents. (*Id.* at PageID.1864).  Leave is not granted at this time.  Should State Farm learn of the need to conduct further discovery, State Farm should file a motion accordingly.

### D.   Conclusion

In conclusion, State Farm's motion for sanctions is **GRANTED** only as to the issues related to the corept17 account.  The motion is **DENIED** with respect to the remainder of the motion for sanctions.

With respect to the issue of responsive emails from current and former employees and independent contractors, the parties **must confer** on the list of search terms and the letter to be mailed to former employees and independent contractors **within 7 days** of service of this Order.  Core Defendants must **mail the letters within 3 days** of settling the contents of the letter.

21

Core Defendants are **ORDERED** to correct their production of emails from the corept17 account in accordance with this Order, the Court's December 2, 2020 Order, and Fed. R. Civ. P. 34 **within 14 days** of service of this Order.

State Farm is **ORDERED** to file a supplemental brief on the costs incurred in bringing this motion **within 7 days** of service of this Order.  Core Defendants are **ORDERED** to file a response to State Farm's supplemental brief **within 7 days** of service of the supplemental brief.  No reply will be allowed.

The Court will consider the possibility of an award of monetary sanctions in its consideration of an award of costs.

**IT IS SO ORDERED**.

The parties to this action may object to and seek review of this Order, but are required to file any objections within 14 days of service as provided for in Federal Rule of Civil Procedure 72(a) and Local Rule 72.1(d).  A party may not assign as error any defect in this Order to which timely objection was not made. Fed. R. Civ. P. 72(a).  Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection.  When an objection is filed to a magistrate judge's ruling on a non-dispositive motion, the ruling remains in full force and effect unless and until it is stayed by the magistrate judge or a district judge.  E.D. Mich. Local Rule 72.2.

Date:  March 24, 2021                    <u>s/Curtis Ivy, Jr.</u>
                                         Curtis Ivy, Jr.
                                         United States Magistrate Judge