UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

State Farm Mutual Automobile
Insurance Company,

      Plaintiff,

v.                                                                        Case No. 19-10835

Precious Physical Therapy, Inc., *et al.*,                 Sean F. Cox
                                                                              United States District Court Judge

      Defendants.
_____/

## OPINION AND ORDER
## DENYING IN PART GRANTING IN PART
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, State Farm Mutual Automobile Insurance Company ("State Farm") sued two physical therapists, the clinics through which they provided services, and the owners of those clinics. (ECF No. 1).

There are currently two matters before the Court: (I) Defendants Core Physical Therapy, Inc. ("Core"), Payal Bhagat ("Payal"), Hemalkumar Bhagat ("Hemal"), and Salwa Elia ("Elia") (together "Core Defendants")'s motion for summary judgment (ECF No. 96); and (II) Core Defendants' motion to strike State Farm's expert report and exclude expert testimony. (ECF No. 98).

For the following reasons, the Court **DENIES** Core Defendants' motion for summary judgment as to State Farm's fraud and declaratory judgment claims (Counts I, II, III, and IX). The Court **GRANTS** Core Defendant's motion for summary judgment as to State Farm's unjust enrichment claims as to Hemal, Payal, and Elia (Counts IV, V, and VI). Finally, the Court **DENIES** Core Defendant's motion to strike Dr. Hoyer's expert report and exclude expert testimony.

1

# BACKGROUND

On March 21, 2019, State Farm initiated this action alleging three counts of common law fraud, three counts of unjust enrichment, and two counts seeking declaratory judgment. (ECF No. 1). In their Complaint, State Farm alleges the Defendants engaged in a fraudulent scheme to obtain money from State Farm by submitting bills and documentation for services purportedly provided to individuals who were in automobile accidents and were eligible for personal injury protection benefits under State Farm policies. (ECF No. 1) The Defendants allegedly treated patients pursuant to a "predetermined treatment protocol" designed to enrich the Defendants rather than treat the patients' individual medical needs. (ECF No. 1 at PageID 2).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with FED. R. CIV. P. 56 (c) that:

> a.  The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute.  The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

> b.  In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts.  The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record.  The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.

> c.  All material facts as set forth in the Statement of Material Facts Not in Dispute shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.

(Scheduling Order at 3).

The parties complied with the Court's practice guidelines for summary judgment motions such that Core Defendants filed a "Statement of Material Facts Not In Dispute" ("Def's "Stmt.")

(ECF No. 97) and Plaintiff filed "Counter-Statement of Disputed Facts" ("Pl.' s Stmt.") (ECF No. 114).

Defendants in this case are Precious Physical Therapy, Inc. ("Precious"); Sterling Physical Therapy Provider Corp. ("Sterling"); Core Defendants; Khalid Gazguz ("Gazguz"); and Hansee Sesi ("Sesi") (collectively "Defendants"). (ECF No. 1 at PageID 1).

Hemal was a licensed physical therapist who provided physical therapy services to Precious and Sterling patients. (Def's Stmt. at PageID 3246). Payal is married to Hemal and is a partial owner of Sterling and Core. (Def's Stmt. at PageID 3246). Payal also directed Sterling and Core's activities and employees and provided physical therapy services at Sterling and Core. (Def's Stmt. at PageID 3249).

Gazguz and Sesi were owners of Sterling and profited from Sterling's activities. (Def's Stmt. at PageID 3248). Elia was a manager at first at Sterling then at Core when Sterling closed. Elia also is an owner in Core and profits from its activities. (Def's Stmt. at PageID 3247).

On April 15, 2021 Core Defendants filed this motion for summary judgment arguing: (1) State Farm cannot prove fraud; and (2) State Farm refused to proffer evidence of its alleged damages. (ECF No. 96, at PageID 2673). Core Defendants ask the Court to dismiss the entire Complaint (even claims against those whom are not involved in this motion). (Def's Br. at PageID 2703).

On May 20, 2021, State Farm responded to Core Defendant's motion for summary judgment arguing: (1) there is an abundance of admissible evidence that creates genuine issues of material fact on all key issues of the case; (2) defendant's scattershot arguments for why they are entitled to judgment as a matter of law should be rejected. (ECF No. 113, at PageID 5316).

3

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment carries the initial burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir. 2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

Because this Court sits in diversity, the substantive law of Michigan governs the claims of in this case. *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).

As stated above, Core Defendants have brought two separate motions that are currently before the Court: (I) a motion for summary judgment pursuant to FED. R. CIV. P. 56 (ECF No. 96);

and (II) a motion to strike Dr. Hoyer's expert report and testimony pursuant to Fed. R. Civ. P. 702 (ECF No. 98).

## I. Motion for Summary Judgment

In the Complaint, State Farm alleges three counts of common law fraud, three counts of unjust enrichment, and two counts seeking declaratory judgment. (ECF No. 1).

Core Defendants make four main arguments that they should be entitled to summary judgment: (A) State Farm cannot prove fraud; (B) State Farm refused to proffer evidence of its alleged damages; (C) there is no evidence that Hemal, Payal, or Salwa were unjustly enriched by State Farm; (D) State Farm is not entitled to declaratory relief. (ECF No. 96, at PageID 2673-2674).

## A. Fraud

The elements of common-law fraud are: (1) defendants made material representations; (2) that were false; (3) when defendants made the representations, they knew they were false, or made them recklessly, without knowledge of their truth; (4) defendants made the representations with the intention that plaintiff would act upon them; (5) plaintiff did act in reliance upon them; and (6) plaintiff suffered damages. *M&D, Inc. v. W.B. McConkey*, 231 Mich.App. 22, 27 (1998).

### A. State Farm's Evidence Regarding Fraud

In order to survive this motion for summary judgment, State Farm needs to present evidence that creates a genuine issue of material fact regarding fraud, and State Farm has done so. State Farm has provided evidence of: (1) Dr. Hoyer's declaration and testimony regarding the medical necessity of the Core Defendants' treatment[1] (ECF No. 117-1); (2) testimony from Brian Radcliff regarding State Farm's reliance and damages (ECF No. 115-4); and (3) "summary charts

---

[1] The Court will address Core Defendant's motion to strike Dr. Hoyer's testimony below.

reflecting noncredible patterns" in Core's bills and records (ECF No. 130-4; ECF No. 130-5). (Pl's Br. at PageID 5322).

State Farm has provided sufficient evidence to create a genuine issue of material fact regarding Core Defendants' false material representations via Dr. Hoyer's expert report. Dr. Hoyer reviewed "50 treatment files for patients who treated at Core Physical Therapy." (ECF No. 117-1, at PageID 5811). In Dr. Hoyer's report, he concluded:

- Patients at the Clinics received evaluations and treatment plans that were not tailored to their unique needs.
- The Providers' clinical documentation did not support their treatment plans.
- The Providers' documentation of minimal patient improvement was not consistent with the variation one would see and expect to see in a patient population of individuals with primary soft tissue injuries following motor vehicle accidents.
- The Providers physical exam findings, including muscle strength and range of motion testing, documented their examination reports were not credible.
- Treatment provided to patients was not individually tailored and did not vary in any meaningful way across time nor according to patient needs.
- Based on these concerns, and for the reasons explained below, the clinical documentation prepared by the Providers was not credible and the treatment provided at the Clinics was not medically necessary.

(ECF No. 117-1, at PageID 5812). At this stage in the proceeding, this evidence offered by State Farm must be taken as true. *CenTra, Inc.*, 538 F.3d at 412.

State Farm presented evidence to create a genuine issue of material fact that Core Defendants made the representations knowing that State Farm would act upon those representations. Brian Radcliff, a team manager within the special investigations unit of State Farm, testified that each insurance claim submitted to State Farm is processed on a claim-by-claim basis. (ECF No. 115-4, at PageID 5677). State Farm claim specialists receive bills on discrete claims for discrete dates of service and must make payment determinations within the thirty days as required under Michigan's No-Fault Act. *See* M.C.L. § 500.3142. (ECF No. 130-7). Given the

process of insurance claims under Michigan's No-Fault Act, State Farm has presented evidence of a genuine issue of material fact regarding fraud.

*B. Core's Arguments Regarding Fraud*

Core Defendants argue that State Farm cannot prove fraud because: (1) State Farm's witnesses refused to testify about fraud; (2) the individual claims are not fraudulent; (3) Defendants' representations are medical opinions, not material facts; (3) State Farm's self-created "pattern" is not fraud; (4) all physical therapy treatment was provided pursuant to valid prescriptions; (6) there is no evidence State Farm relied on Defendants' representations. For the reasons described below, the Court does not find any of these arguments persuasive.

*1. Witnesses Testimony*

Core Defendants argue that State Farm cannot prove fraud because State Farm's witnesses "categorically refused to explain how Defendants committed fraud or even refused to use the terms 'fraud' or 'fraudulent' in their testimony." (ECF No. 96, at PageID 2686-2687). However, this argument is not based in the actual elements of common-law fraud. Core Defendants do not identify any case law to support this assertion that witnesses are required to use the term "fraud" when testifying in order to establish a common-law fraud claim. Rather, the Sixth Circuit has cautioned expert witnesses against going "the next step to infer for the jury or the Court that those facts demonstrate a certain intent, motive, or state of mind." *Visteon Glob. Techs., Inc. v. Garmin Int'l, Inc.*, 2016 WL 4396085 (E.D. Mich. Aug. 18, 2016) (citing *CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 890 (6th Cir. 1996), abrogated on other grounds by *Morales v. Am. Honda Motor, Co.*, 151 F.3d 500 (6th Cir. 1998) ("The intent of the parties is an issue within the competence of the jury and expert opinion testimony will not assist the jury, within the meaning of Federal Rule of Evidence 702, in determining the factual issue of intent."). The legal concept

of "fraud" is an "issue[] of law and [is] within the sole competence of the court." *CMI-Trading*, 98 F.3d at 890.

### 2. Individual Claims

Core Defendants argue that the claims of individual patients, including A.D., G.L., and K.S., are not fraudulent. (Def's Br. at PageID 2687-2690). The thrust of Core Defendant's argument is that State Farm is still paying A.D. and G.L.'s claims, and therefore State Farm "isn't even convinced that Core's bills and documentation are fraudulent." (Def's Br. at PageID 2688). Further Core Defendants point to testimony that some of the individual patients' treatment was reasonably necessary. (Def's Br. at PageID 2688-2689). However, this evidence regarding individual claims does not show an absence of genuine material fact in light of the counter-evidence provided by State Farm, such as Dr. Hoyer's declaration and testimony (ECF No.117-1), Radcliff's testimony regarding State Farm's reliance and damages (ECF No. 115-4), and the summary charts reflecting noncredible patterns in Core's own bills and records (ECF No. 130-4; ECF No. 130-5). At summary judgment, Court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Here, the evidence presents a genuine issue of material fact.

### 3. Medical Opinions

Core Defendants rely on an Eleventh Circuit case to argue that State Farm does not have any "facts" to prove its fraud claims because medical opinions are not statements of fact. (Def's Br., at PageID 2690). See *United States v. AseraCare, Inc.*, 938 F.3d 1278 (11th Cir. 2019). Core Defendants further assert that the information contained in "Core's evaluations is provided by the patient, such as history of injury, functional limitations, and pain scale." (Def's Br., at PageID 2691).

8

However, *AseraCare* is not applicable to the matter at hand where the scope of the false representations is more than just "reasonable disagreement between medical experts." *AseraCare*, 938 F.3d at 1301. As State Farm notes, Core's alleged fraud "includes not just misrepresentations in evaluations, but also in treatment records, plans of care, and bills from Precious, Sterling, and Core." (Pl's Br., at PageID 5337).

### 4. State Farm's Pattern

The Court notes that Core Defendants never fully made an argument here, but rather made a series of assertions about State Farm's characterizations of the facts at issue. (Def's Br., at PageID 2691-2693). Core Defendant asserts "State Farm's fraud claim is predicated on its own fallacious conclusion that treatment for patients that shared some characteristics is per se fraudulent or 'not credible' because of State Farm's subjective and baseless expectation as to the type of treatment and outcomes for an undefined patient population." (Def's Br., at PageID 2692). This "argument" is better suited for trial because it effectively asks the Court to do to what it cannot do at a summary judgment proceeding: weigh the evidence. *Anderson*, 477 U.S. at 249.

### 5. Prescriptions

Similarly, Core Defendants never fully made an argument regarding prescriptions. (Def's Br., at PageID 2693-2695). Instead, Core Defendants asserted that all physical therapy treatment was provided pursuant to valid prescriptions, but never connected it as to why this assertion supports their argument for summary judgment. Thus, the Court will not address it.

### 6. State Farm's Reliance on Core Defendants Representations

As explained above, State Farm has provided evidence that it relied upon the representations made by Core Defendants when making payments on insurance claims under the Michigan No-Fault Act. State Farm claim specialists receive bills on discrete claims for discrete

dates of service and must make payment determinations based on the representations provided by the medical provider within the thirty days as required under Michigan's No-Fault Act. *See* M.C.L. § 500.3142. (ECF No. 130-7). State Farm has provided sufficient evidence to demonstrate a genuine issue of material fact as to whether State Farm relied on Core Defendants representations when making those payment determinations.

## B. Evidence of Damages

FED. R. CIV. P. 26(a)(1)(iii) requires a party to provide:

> a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered . . .

Core Defendants argue that "State Farm refused to proffer evidence of its Alleged Damages." (Def's Br., at PageID 2697-2699). Core Defendants base this argument on Radcliff's uncertainty as to the exact amount of damages during his deposition. (Def's Br., at PageID2697). However, in his testimony, Radcliff referred to a chart prepared by State Farm that presents damages in the form of payments made to Precious, Sterling, and Core. (ECF No. 130-7, at PageID 6442). This chart is sufficient evidence of State Farm's alleged damages at this stage.

## C. Unjust Enrichment of Hemal, Payal, or Elia

The essential elements of an unjust enrichment claim are: "(1) receipt of a benefit by the defendant from the plaintiff, and (2) which benefit it is inequitable that the defendant retain." *B&M Die Co. v. Ford Motor Co.*, 167 Mich.App. 176, 181 (1988); see also *Dumas v. Autoclub Ins. Ass'n*, 473 N.W.2d, 562, 663 (Mich. 1991).

Core Defendants argue that "there is no evidence that Hemal, Payal, or [Elia] were unjustly enriched by State Farm." (Def's Br., at PageID 2700). More specifically, Core Defendants argue

10

that there is no evidence that State Farm *directly* conferred a benefit on Hemal, Payal, or Elia and therefore State Farm cannot prove the first element of unjust enrichment. (Def's Br., at PageID 2700). Core Defendants are correct that "[c]ustomarily, Michigan courts only employ the doctrine of unjust enrichment in cases where the defendant directly receives a benefit from the plaintiff." *Schechner v. Whirlpool Corp.*, 237 F.Supp.3d 601, 618 (E.D. Mich. 2017).

In its brief for this motion, State Farm does not cite any authority to support its assertion that it does not need to show that it made direct payments to Payal, Hemal, or Elia or that Elia engaged in wrongdoing to prove its unjust enrichment counts. (Def's Br., at PageID 5340). Instead, State Farm directs the Court to its brief in a different motion for summary judgment currently pending in this case. (ECF No. 108, at PageID 5002).

In this other brief addressing the unjust enrichment of a Defendant not at issue in this motion (Sesi) (ECF No. 108), State Farm relies on caselaw interpreting the Michigan Supreme Court opinion, *Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 443 Mich. 176 (1993). At first glance, it appears that the *Kammer* court held that a direct benefit is not required for a claim of unjust enrichment. However, a recent opinion from this District summarized *Kammer*'s holding and explained that under a close reading of the *Kammer* opinion, there is a limitation to that holding:

> In *Kammer*, the plaintiffs were subcontractors who performed substantial work on the defendant school district's buildings, and they were in privity of contract with the general contractor and not the school district. 504 N.W.2d at 641. Although the *Kammer* court noted that "plaintiff indirectly provided defendant a benefit," *id.*, "the defendant and the plaintiff were in direct contact with one another while the plaintiff performed work at facilities owned by the defendant and the facts clearly show that the defendant benefited directly from the plaintiff's work." *Smith*, 2014 WL 4087968, at *1. So "[a]lthough Michigan courts have permitted unjust enrichment claims to proceed when a subcontractor indirectly conferred a benefit by performing work projects on a defendant's building, the Michigan Supreme Court has limited this exception to when the defendant and plaintiff had some sort of direct interaction." *Storey*, 2016 WL 3125210, at *12. **Thus, to state a claim for**

> **unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction** between Plaintiffs and Whirlpool. *Id.*

*Schechner*, 237 F.Supp.3d at 618 (emphasis added). Therefore, under a close reading of *Kammer*, for a claim of unjust enrichment, Payal, Hemal, and Elia need either a direct benefit or some sort of direct interaction with State Farm. State Farm did not argue or provide evidence that Payal, Hemal, or Elia received a direct benefit from State Farm. Neither did State Farm argue or provide evidence that a direct interaction existed between Payal, Hemal, Elia, and State Farm.

Therefore, the Court GRANTS summary judgment as to Core Defendants' argument that there is no evidence that Hemal, Payal, or Elia were unjustly enriched from State Farm. The Court dismisses Counts IV as to Hemal. The Court dismisses Count V as to Hemal and Payal. Finally, the Court dismisses Count VI as to Payal and Elia. As Count VI is the only claim alleged against Elia, the Court dismisses Elia is from the case.

**D. Declaratory Relief**

Core Defendants argue "State Farm's claim for declaratory judgment is base on its meritless accusation that Core made false and fraudulent statements and is therefore not entitled to payment for any claim that was unpaid when the Complaint was filed." (Def's Br., at PageID 2702). As established above, there is a genuine issue of material fact that as to State Farm's fraud claims and therefore, there is a genuine issue of material fact as to the declaratory judgment claims because State Farm's request for declaratory judgment is based upon the fraud claims.

For the reasons described above, the Court DENIES Core Defendants' motion for summary judgment as to fraud and declaratory relief and GRANTS Core Defendants' motion as to unjust enrichment.

**II. Motion to Strike State Farm's Expert Report and Exclude Expert Testimony**

"District court judges must determine whether an expert's testimony is both relevant and reliable when ruling on its admission." *Clay v. Ford Motor Company,* 215 F.3d 663, 667 (6th Cir. 2000). A trial judge's determinations regarding the admissibility of expert testimony are guided by FED. R. EVID. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Rule 702 of the Federal Rules of Evidence governs testimony by experts and provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under *Daubert*, the trial court acts as a "gatekeeper" that ensures that any and all scientific testimony or evidence admitted is not only relevant, but reliable. *Daubert* sets forth a nonexclusive list of factors relevant to this inquiry: (1) whether the theory or technique can be or has been tested; (2) whether it has been subjected to peer review; (3) whether there is a known or potential rate of error; and (4) whether the theory or technique enjoys general acceptance in the relevant scientific community. *Daubert*, 509 U.S at 593-94. *In Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court confirmed that "the general gatekeeping obligation set forth in *Daubert*" "applies when considering all expert testimony, including testimony based on technical and other specialized knowledge." *Clay*, 215 F.3d at 667. "It further held that the specific *Daubert* factors—

13

testing, peer review and publication, potential rate of error, and general acceptance in the relevant community—may be considered by the district court even when the proffered expert testimony is not scientific." *Id*. Whether these specific factors are reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine. *Id*.

"It is the proponent of the testimony that must establish its admissibility by a preponderance of proof." *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 244, 251 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). A district court is not obligated to hold a formal *Daubert* hearing when an expert's testimony is challenged. See *Clay*, 215 F.3d at 667; *Nelson*, 243 F.3d at 249.

State Farm presents Dr. Erik Hoyer as an expert in this case. (ECF No. 117-1, at PageID 5807). Core Defendants make four main arguments that the Court should strike Dr. Hoyer's expert report and exclude Dr. Hoyer's testimony: (A) Dr. Hoyer failed to give an expert opinion that will assist the trier of fact; (B) Dr. Hoyer is not qualified as an expert in this case; (C) Dr. Hoyer's opinions are speculative and unreliable; (D) Dr. Hoyer's opinion are based on incorrect and undefined legal standards. (Def's Br., at PageID 3817-3827).

None of these arguments provide any basis under the controlling *Daubert* standard to exclude Dr. Hoyer's report or his testimony. For the reasons described below, the Court does not find any of Core Defendant's arguments regarding Dr. Hoyer persuasive.

**A. Assistance to the Trier of Fact**

Core Defendants argue that "Dr. Hoyer failed to give an opinion as to the sole relevant issue in State Farm's complaint: whether the treatment was fraudulent." (Def's Br. at PageID 3817). However, Core Defendants do not support this argument with any authority. In fact, Sixth Circuit caselaw explicitly warns witnesses from going "the next step to infer for the jury or the

14

Court that those facts demonstrate a certain intent, motive, or state of mind." *Visteon Glob. Techs., Inc.*, 2016 WL 4396085. As established above, "fraud" is a legal concept and an "issue[] of law and [is] within the sole competence of the court." *CMI-Trading*, 98 F.3d at 890. Therefore, Dr. Hoyer is under no obligation under FED. R. EVID. 702 to give testimony to the legal definition of fraud.

## B. Dr. Hoyer's Qualifications

The thrust of Core Defendants argument that Dr. Hoyer is not qualified as an expert in this case is that he is not a physical therapist. (Def's Br. at PageID 3818). However, this is contrary to Sixth Circuit caselaw, which has disregarded the difference in licensure and held that "the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." *Dickenson v. Cardiac and Thoracic Surgery of Eastern Tenn.*, 388 F.3d 976, 980 (6th Cir. 2004) (citing FED. R. EVID. 702 advisory committee's note (2000 Amendments)).

Dr. Hoyer is eminently qualified to opine on the medical treatment of automobile accident victims for the types of injuries at issue here. He is a board certified physical and medicine rehabilitation physician. (ECF No. 117-1, at PageID 5807). He is also an Assistant Professor of Physical Medicine and Rehabilitation at the John Hopkins University School of Medicine. (ECF No. 117-1, at PageID 5807). He has extensive clinical experience and expertise in treating automobile accident victims with musculoskeletal injuries. (ECF No. 117-1, at PageID 5808). Additionally, Dr. Hoyer testified in his report that he works "in close collaboration with physical therapists" and is "familiar with the standard of care as it pertains to the practice of physical therapy rehabilitation for musculoskeletal injuries." (ECF No. 117-1, at PageID 5811).

The Court finds that Dr. Hoyer is qualified as an expert in this case. "*Daubert*'s role of ensuring that the courtroom door remains closed to junk science is not served by excluding

15

testimony such as [Dr. Hoyer's] that is supported by extensive relevant experience. Such exclusion is rarely justified in cases involving medical experts as opposed to supposed experts in the area of product liability." *Dickenson*, 388 F.3d at 982 (internal citations and quotations omitted).

## C. Dr. Hoyer's Opinions

Core Defendants argue that "Dr. Hoyer's opinions are speculative and unreliable." As an initial matter, Core Defendants do not support this argument with any controlling caselaw. Core Defendants simply assert that Dr. Hoyer relied on "the patterns of care" in making his opinion and that he "did not provide a basis for his opinions other than the 'totality' or 'pattern' of care." (Def's Br., at PageID 3823).

However, Dr. Hoyer testified that he "reviewed 50 treatment files for patients who treated at Core Physical Therapy." (ECF No. 117-1, at PageID 5811). "No one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Dickenson*, 388 F.3d at 980 (citing *Kumho*, 526 U.S. at 156). Dr. Hoyer's review of patient files with his expertise in physical medicine and rehabilitation is sufficient to establish admissibility of his opinion.

## D. Legal Basis for Dr. Hoyer's Opinions

As established above, "Rule 702 prohibits expert witnesses from testifying to legal conclusions." *United States v. Melcher*, 672 F. App'x 547, 522 (6th Cir. 2016).

Core Defendants' final argument to exclude Dr. Hoyer's report and testimony is that Dr. Hoyer did not consider the treatment, documentation, and billing procedures required under the Michigan No-Fault Act. (Def's Br. at PageID 3825). But this is not relevant as to whether Dr. Hoyer's report and testimony should be excluded under FED. R. EVID. 702.

Core Defendants further assert "Dr. Hoyer defined the legal standards for physical therapists in Michigan as including a right and duty to determine the frequency and duration of physical therapy regardless of the prescription." (Def's Br., at PageID 3827). Core Defendants are cherry-picking parts of Dr. Hoyer's testimony and piecing them together to make this assertion, but it is a mischaracterization of the record upon the Court's review. To the contrary, Core Defendants' counsel repeatedly asked Dr. Hoyer to come to legal conclusions. (ECF No. 98-3, PageID 4123-PageID 4149). In response, Dr. Hoyer resisted coming to legal conclusions and repeatedly answered with his personal knowledge of how physical therapy treatment usually proceeds: "Again, I'm not an expert in the law . . . ." (ECF No. 98-3, PageID 4128; 4123-4149).

An expert makes a legal conclusion when "he defines the governing legal standard or applies the standard to the facts of the case." *Melcher*, 672 F. App'x at 522. First, the Michigan No-Fault Act is not the governing legal standard in this case. The claims at issue are common-law fraud and unjust enrichment. Second, the Court finds that Dr. Hoyer did not define a legal standard at all because his testimony referred to usual physical therapy practice from his experiences not to a legal standard.

## CONCLUSION

For the reasons explained above, the Court **DENIES** Core Defendants' motion for summary judgment as to State Farm's fraud and declaratory judgment claims (Counts I, II, III, and IX).

The Court **GRANTS** Core Defendant's motion for summary judgment as to State Farm's unjust enrichment claims as to Hemal, Payal, and Elia. The Court dismisses Count IV as to Hemal. The Court dismisses Count V as to Hemal and Payal. The Court dismisses Count VI as to Payal

and Elia. As Count VI is the only claim alleged against Elia, the Court dismisses Elia is from the case.

Finally, the Court **DENIES** Core Defendant's motion to strike Dr. Hoyer's expert report and exclude expert testimony.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated:  August 9, 2021